IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REYNOLD BOTELHO; ROYCE BREITHAUPT; ERIC JOHNSON; LEONARD KAINOA; LARRY KAMALII; WAYNE OKUTSU; ERIK SKILLMAN; and LOPAKA COSTA, individually and in behalf of all person similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>STATE OF HAWAII; BERYL IRAMINA; PETE MACDONALD; and JOHN DOES 1-50,<br><br>        Defendants.<br>_____ | CIV. NO. 06-00096 DAE/BMK |

ORDER:  (1) DENYING WITHOUT PREJUDICE PLAINTIFFS' RENEWED
MOTION FOR CLASS CERTIFICATION; AND (2) DENYING WITHOUT
PREJUDICE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

On February 24, 2010, the Court heard Plaintiffs' Motion for

Preliminary Injunction and Renewed Motion for Class Certification.  Eric A. Seitz,

Esq., and Lawrence I. Kawasaki, Esq., appeared at the hearing on behalf of

Plaintiffs; Kendall J. Moser, Deputy Attorney General, appeared at the hearing on

behalf of Defendants.  After reviewing the motion and the supporting and opposing

memoranda, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for

Preliminary Injunction and **DENIES WITHOUT PREJUDICE** Plaintiffs'

Renewed Motion for Class Certification.  (Docs. ## 122, 123.)

BACKGROUND

Plaintiffs, including both pretrial detainees and post-conviction

inmates, brought this lawsuit as a class action on behalf of inmates incarcerated at

Hawaii Community Correctional Center ("HCCC") facilities from February 2004

to the present.[1]  Plaintiffs allege violations of their Fourteenth and Eighth

Amendment rights, as well as various torts, arising from the conditions of their

confinement at the HCCC facilities, including but not limited to the intake area

commonly referred to as the "fish bowl."

Specifically, Plaintiffs allege that inmates were subject to

overcrowding and were forced to sleep on thin pads, side-by-side on the floor.

Inmates were also allegedly denied access to toilet facilities.  Plaintiffs also allege

that they were denied visitation and recreational time as well as adequate bathing

facilities, cleaning supplies, bedding, and personal hygiene materials.

On July 24, 2004, the inmates started fires in certain housing areas of

HCCC in protest of the conditions of confinement.  Due to the fires, several

---

[1] As originally filed, the time period at issue was February 2004 through
August 2005.  Subsequent amendments to the complaint have expanded the time
period to the present.

2

inmates claimed to have suffered smoke inhalation and injuries relating to trampling.

Plaintiffs filed their original complaint in this case on February 16, 2006, which they amended on March 9, 2006.  In a Stipulated Settlement Agreement and Order filed with this Court on October 31, 2006, the parties stipulated to an administrative process by which claims arising from the conditions of confinement would be reviewed (the "Stipulation").  (Doc. # 18.)  The Stipulation also contained the parties' agreement that a special master would hold evidentiary hearings and recommend findings on damages suffered by individuals in the putative class.  (Id. at 2.)

After notice of the Stipulation was published, 227 current and former inmates submitted claims forms.  Of the initial 227 inmates who submitted claim forms, it was determined that 26 were not housed at HCCC facilities during the relevant time period and this Court dismissed them from the action on April 30, 2008.  (Doc. # 42.)  Of the remaining 201 claimants, Defendants agreed to settle claims for four class members who were housed in the "fish bowl" on the day of the fire.  These four claimants are Eric Johnson, Reynold Botelho, Wendell Olivera, and Ronald Saiki.  Judgment was entered in their favor on April 13, 2009.

(Doc. # 70.)  An Amended Partial Judgment was entered for the same four plaintiffs on September 9, 2009.  (Doc. # 104.)

The parties could not agree to the special master's recommendations as to a reasonable settlement value for all the claims of inmates.  As such, settlement discussions broke down and a new Rule 16 scheduling conference was held on May 14, 2009.  A new trial date was set for May 25, 2010, and the new dispositive motions deadline was set for December 23, 2009.  (Doc. # 80.)

On June 24, 2009, Plaintiffs filed two motions, which the Court denied:  (1) a motion for partial summary judgment as to Defendants' liability (Doc. # 90); and (2) a motion for certification of class (Doc. # 89).  In an Order filed September 9, 2009, this Court denied both motions as premature.  (Doc. # 105.)  The Court determined that the parties had not engaged in meaningful discovery while the case was in the claims-resolution settlement process, and as such, neither party had an opportunity to investigate the numerous allegations, apart from the four individuals subject to the April 13, 2009 judgment.

Subsequently, on December 16, 2009, Plaintiffs filed a Second Amended Complaint (the "Second Amended Complaint" or "SAC").  (Doc. # 118.)  The named plaintiffs, Reynold Botelho, Royce Breithaupt, Eric Johnson, Leonard Kainoa, Larry Kamalii, Wayne Okutsu, Eric Skillman, and Lopaka Costa,

4

(collectively, "Plaintiffs"), were or are incarcerated at HCCC during the time at issue.[2]  The SAC is brought against the State of Hawai`i Department of Public Safety, HCCC warden Beryl Iramina in her individual and official capacities, HCCC warden Pete MacDonald in his individual and official capacities, and various unnamed defendants (collectively, "Defendants").

The Second Amended Complaint dramatically expanded the class of individuals allegedly represented by Plaintiffs.  The SAC has added a claimant, Costa, who is currently incarcerated at HCCC.  The unnamed putative class members are now those inmates incarcerated at HCCC from February 2004 through the present.  Plaintiffs contend that Defendants continue the practice of "routinely requiring inmates to sleep on thin pads on the floor in areas of HCCC including areas that are not designed for human occupancy, without reasonable access to toilet and/or bathing facilities, cleaning supplies/materials, clean bedding, personal hygiene material, and without any significant daily outside/exercise time." (SAC at 9.)

The SAC asserts four causes of action.  Count I asserts that Defendants have breached their duty to provide Plaintiffs with a safe and healthy

---

[2] According to the SAC, the only named plaintiff currently incarcerated at HCCC is Lopaka Costa.  Costa has been incarcerated since May 2009.  (SAC at 6.)

living environment including adequate housing, visitation, exercise, and proper

visitation.  (Id. at 10.)  Count II alleges that individual Doe defendants and

Defendants Iramina and MacDonald have subjected Plaintiffs to cruel and unusual

punishment and/or denied Plaintiffs due process of law in violation of the U.S.

Constitution and other laws of the State of Hawai`i.  (Id. at 10-11.)  Count II is

brought pursuant to 42 U.S.C. § 1983.  Count III alleges "deliberate indifference"

against the State of Hawai`i, Iramina, and MacDonald, and states that they failed to

properly train and supervise the HCCC staff.  (Id. at 11.)  Count IV is a negligence

claim against Defendants.  (Id. at 12.)  Plaintiffs seek preliminary and permanent

injunctions and damages.

On December 23, 2009, Plaintiffs filed the instant Motion for

Preliminary Injunction.  (Doc. # 123.)  On February 1, 2010, the State of Hawaii

and Iramina filed an Opposition.  (Doc. # 130.)  On February 4, 2010, Plaintiffs

filed a Reply.  (Doc. # 133.)

Also on December 23, 2009, Plaintiffs filed the instant Renewed

Motion for Class Certification.  (Doc. # 122.)  On February 1, 2010, the State of

Hawaii and Iramina filed an Opposition.  (Doc. # 129.)  On February 4, 2010,

Plaintiffs filed a Reply.  (Doc. # 132.)

On February 12, 2010, this Court issued an Order to Show Cause Why Plaintiffs' Claim for Injunctive Relief Should Not Be Dismissed As Moot.  (Doc. # 135.)  On February 17, 2010, Defendants submitted their supplemental briefing on the matter.  (Doc. # 139.)  Simultaneously on February 17, 2010, Plaintiffs filed their supplemental briefing.  (Doc. # 140.)

## DISCUSSION

### I.   Mootness

Of the eight named Plaintiffs, only Lopaka Costa is currently incarcerated at HCCC.  Costa is incarcerated for a parole violation, and his parole will expire on or about March 28, 2010.  There does not appear to be a reasonable likelihood that, after his parole expires, Costa will again return to the particular HCCC facilities or be subject to the same conditions of confinement complained of.  See Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986) (holding that inmate's claim for injunctive relief was moot because he had been transferred from the penitentiary at issue to a corrections center with little likelihood that he would return to the penitentiary).

The Court notes that the class has yet to be certified, and generally if a class representative's personal claim becomes moot before certification, then the case must be dismissed.  See Sosna v. Iowa, 419 U.S. 393 (1975).  If a class has

been successfully certified, however, the case may continue even if the named

plaintiff's case becomes moot.  Bates v. United Parcel Serv., Inc., 511 F.3d 974,

987 (9th Cir. 2007); Bd. of Sch. Comm'rs of the City of Indianapolis v. Jacobs,

420 U.S. 128 (1975); see also Narouz v. Charter Commc'n, LLC, 591 F.3d 1261,

1264 (9th Cir. 2010) (appeal from denial of class certification is not rendered moot

by class representative's settlement).

　　　　This Court ordered the parties to submit simultaneous supplemental

briefing on the matter of mootness.  In response to this Court's Order to Show

Cause, Plaintiffs argue two points to support their contention that the claims for

injunctive relief should not be dismissed as moot.

　　　　First, Plaintiffs argue that "this matter falls squarely within the

'capable-of-repetition-yet-evading-review' branch of the mootness doctrine."  (Pl.

Supp. Mem. at 2.)  Plaintiffs argue that Costa is likely to be subject to the same

conditions sometime before he is released on March 28, 2010, because it is

possible he may be transferred from his current location at the Hale Nani facility

(about which he apparently has no complaints) back to the Punahele facility (the

conditions of which he claims violates his constitutional rights).  (Id. at 5.)  The

Court finds Plaintiffs' assertion questionable, because Defendants have submitted

the declaration of Kathy Wheeless, which states that, absent misconduct on Costa's

part, he will remain at Hale Nani until his release and therefore will not be subject to the conditions about which he complains.  (Def. Supp. Mem. at 2.) Nevertheless, Plaintiffs maintain that the scenario is capable of repetition.

Also in their supplemental briefing, Plaintiffs raise for the very first time the argument that Plaintiff Wayne Okutsu will return to HCCC at some point in the future.  (Pl. Supp. Mem. at 5.)  According to Plaintiffs, Okutsu is currently confined at Saguaro Correctional Center in Eloy, Arizona, but will return to HCCC for reentry programming pursuant to Hawaii Revised Statutes section 353H-7. (Id.)  Ostensibly, Plaintiffs argue that once Okutsu returns, he will be subject to the same conditions complained of in the Second Amended Complaint.  No additional information about Okutsu's status was submitted along with the motion for preliminary injunction or the supplemental briefing.  Plaintiffs do not inform the Court when Okutsu will return, or to which facility in Hawai`i he will be transferred.  Nor have Defendants had an opportunity to respond thoroughly to this new argument.  It is therefore difficult for this Court to rule on the matter at this time.[3]

---

[3] Also during the hearing, the parties further discussed that Plaintiff Eric Johnson is currently incarcerated.  As defense counsel noted, however, Eric Johnson was one of the four claimants whose claims were settled by the April 13, 2009 judgment.

Second, Plaintiffs argue that this Court should grant their Renewed

Motion for Class Certification, so that Plaintiffs' claim for injunctive relief will not

become moot even if the matter has become moot for a named plaintiff.  (Id. at 6.)

As discussed infra in Part II, however, this Court cannot grant class certification at

this time because Plaintiffs have not demonstrated that they have satisfied the

requirements of Rule 23 and have not provided the Court with any information on

the putative class members dating from 2005 through the present.

At the hearing on this matter, the Court queried the parties whether the

U.S. Supreme Court's holding in Friends of the Earth, Inc. v. Laidlaw

Environmental Services (TOC), Inc., 528 U.S. 167 (2000), may apply to the

allegations made here by Plaintiffs.  Namely, to a situation where a warden might

guarantee to Plaintiffs that the facilities would cease the activities complained of,

but then resume those same activities after the case has settled.  Without briefing,

the Court declined to rule on this question, but during the hearing the Court

instructed the parties to be prepared to discuss Laidlaw as it may apply to the

circumstances of this case, at some point in the future.

It appears that declaring Plaintiffs' claims for injunctive relief moot

would be premature at this juncture.  Costa is still incarcerated and there is

apparently a chance, however slim, that he could be transferred back to Punahele

10

between now and his release.  The Court has no evidence and only minimal

briefing on the status of Plaintiff Okutsu.  Defendants may raise this argument

again if and when they choose to do so at an appropriate time.

II.     Plaintiffs' Renewed Motion for Class Certification

Before certifying a class, a trial court must conduct a "rigorous

analysis" to determine whether the party seeking certification has met the

prerequisites of Federal Rule of Civil Procedure 23.  Valentino v. Carter-Wallace,

Inc., 97 F.3d 1227, 1233 (9th Cir. 1996) (citing In re Am. Med. Sys., 75 F.3d 1069

(6th Cir. 1996); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th

Cir. 2001), amended, 273 F.3d 1266 (9th Cir. 2001).  "While the trial court has

broad discretion to certify a class, its discretion must be exercised within the

framework of Rule 23."  Zinser, 253 F.3d at 1186 (citing Doninger v. Pacific

Northwest Bell, Inc., 564 F.2d 1304, 1309 (9th Cir. 1977)).  The party seeking

class certification "bears the burden of demonstrating that he has met each of the

four requirements of Rule 23(a) and at least one of the requirements of Rule

23(b)."  Id.

Rule 23(b) lists various types of class actions maintainable, including,

as is applicable here, when "the party opposing the class has acted or refused to act

on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole."

Fed. R. Civ. P. 23(b)(2).

Rule 23(a) requires that a movant demonstrate numerosity, commonality, typicality, and adequacy of representation:

> (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

This is Plaintiffs' second motion for class certification.  The first motion was brought "for the benefit of a class consisting of all inmates, both pretrial detainees and convicted inmates, who were incarcerated at the various facilities constituting [HCCC] . . . from on or about February, 2004 to August, 2005."  (Sept. 9, 2009 Order at 9.)  The instant renewed motion seeks to certify a class of "[a]ll inmates, both pretrial detainees and convicted inmates, who were incarcerated at the various facilities constituting the [HCCC] from on or about February, 2004 to present."  (Mot. at 5.)  The renewed motion therefore dramatically broadens the potential pool of inmates, expanding from those

incarcerated in February 2004 through August 2005, to those incarcerated in February 2004 through the present.

In the September 9, 2009 Order, this Court denied Plaintiffs' original motion for class certification as premature.  The court concluded that discovery had not proceeded far enough for the Court to rule.  The Court also noted that further briefing on the matter was warranted.  Plaintiffs were granted leave to re-file once further discovery had been completed.

This renewed motion to certify class was filed one week after Plaintiffs filed their Second Amended Complaint in December 2009.  It is the Court's understanding that no limitation has been placed on the parties' discovery on these matters, and that they have been free to conduct discovery on the matter of class certification.

Despite the fact that this Court permitted Plaintiffs to bring a new motion for certification once Plaintiffs had collected further evidence, Plaintiffs have brought this motion anew without presenting any further meaningful evidence.  The only purported evidence submitted along with the motion is the affidavit of Plaintiffs' counsel, Mr. Seitz, attesting that counsel's office has received a number of complaints from inmates at HCCC.  (Seitz Mot. Aff. ¶ 3.)  At the hearing on this matter, Plaintiffs' counsel noted that he had numerous affidavits

13

in support of the motion, however for reasons unclear to this Court, none of those affidavits were attached to this motion.  According to counsel, the affidavits are attached along with the motion for summary judgment, which is not currently before the Court.  Defendants have consequently not had the opportunity to respond to this evidence in their Opposition to the instant motion.  The Court will therefore rule based on the evidence properly before it.

Plaintiffs' reliance on the Stipulated Settlement Agreement and Order filed with this Court on October 31, 2006, as evidence that class certification should be granted, is misplaced.  (Id. ¶¶ 10-14.)  That Stipulation was entered into between six claimants and Defendants in 2006, and it did not reach the allegations contained in the Second Amended Complaint filed in December 2009.  The Stipulation expressly states that parties in the action were certified as a class "solely for the purposes of this settlement and agreement to the claims resolution process."  (Stip. at 2.)  For purposes of that Stipulation, the claimants included inmates incarcerated at HCCC from February 2004 to August 2005.  The Stipulation says nothing about officially certifying a class, and certainly does not say anything about including inmates incarcerated from August 2005 through the present.

The parties agree that there were 197 claimants from the "February 2004 to August 2005" class,[4] but Defendants correctly observe that these individuals do not have any bearing whatsoever on any additional inmates that might fall into the "August 2005 to present" category.  Furthermore, Plaintiffs concede that "most of the [original] claimants no longer are incarcerated at HCCC due to their release from custody and/or transfer to other correctional facilities on Oahu and the mainland."  (Mot. at 7.)  It is not clear at this juncture, therefore, how many of those original 197 claims are now moot.  Furthermore, the size of the putative class from 2005 through present is entirely speculative.  There has been no briefing specifically on this newly added "2005 to present"group.

Finally, apart from Mr. Seitz's affidavit, there is no evidence for this Court to review and determine whether class certification is appropriate, particularly for the time period after August 2005.  Although class certification is within the discretion of the court, the district court must still base its decision to certify on evidence.  See Armstrong v. Davis, 275 F.3d 849, 871 (9th Cir. 2001) ("So long as the trial court's conclusion is based upon adequate findings supported by substantial evidence in the record, we must defer to its evaluation of the scope

---

[4]  The Court will use the term "class" throughout this Order in reference to Plaintiffs' allegations, however, no formal class has yet been certified by this Court.

15

of the class and the injury it suffered."); see also Kamm v. Cal. City Dev. Co., 509

F.2d 205, 209 (9th Cir. 1975).

For example, in Dukes v. Wal-Mart, Inc., 509 F.3d 1168 (9th Cir.

2007), the Ninth Circuit upheld a district court's determination that the plaintiffs

provided sufficient evidence to support a finding of commonality pursuant to Rule

23.  After analyzing the plaintiffs' evidence, the district court stated:

> Plaintiffs have exceeded the permissive and minimal burden of
> establishing commonality by providing:  (1) significant evidence of
> company-wide corporate practices and policies, which include (a)
> excessive subjectivity in personnel decisions, (b) gender stereotyping,
> and (c) maintenance of a strong corporate culture; (2) statistical
> evidence of gender disparities caused by discrimination; and (3)
> anecdotal evidence of gender bias.  Together, this evidence raises an
> inference that Wal-Mart engages in discriminatory practices in
> compensation and promotion that affect all plaintiffs in a common
> manner.

Id. at 1177 (quoting district court).  The plaintiffs in Dukes presented four

categories of evidence:  (1) facts supporting the existence of company-wide

policies and practices; (2) expert opinions supporting the existence of company-

wide policies and practices; (3) expert statistical evidence of class-wide gender

disparities attributable to discrimination; and (4) anecdotal evidence from class

members around the country of discriminatory attitudes held or tolerated by

management.  Id. at 1178.

16

Additional examples from other district courts show the type of evidence that parties might submit in furtherance of a motion to certify class.  In Von Collin v. County of Ventura, the Central District of California certified a class of inmates who had been restrained by a "pro-straint" chair.  189 F.R.D. 583, 585 (C.D. Cal. 1999).  Plaintiffs submitted documentation that the chair was used approximately 377 times over a 18-month period, and provided analysis of why the chair was used, jail incident reports, inmate monitoring logs, and forensic medical records.  Id. at 590-95.  The analysis showed:  (1) the number of inmates processed during an 18-month period; (2) the number of times inmates were subjected to the alleged confinement during that period; (3) the reasons for each use of the alleged confinement; and (4) the length and number of times each inmate was subjected to the alleged confinement.  Id. at 595-96.  In Cartwright v. Viking Industries, Inc., the plaintiffs sought to certify a class of residents who installed Viking Series 3000 window products.  2009 WL 2982887 (E.D. Cal. Sept. 14, 2009) (slip opinion).  The plaintiffs presented evidence of one-million window product sales during the class period coupled with expert testimony providing the number of windows in an average residence.  Id., 2009 WL 2982887, at *5.  This allowed the court to conclude that windows were installed in approximately 50,000 residential units during the class period and joinder of these parties would be impracticable.  Id.

17

And in <u>Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit</u>

<u>Services, Inc.</u>, the plaintiffs sought to certify a class of bus operator employees for

alleged meal and rest period violations.  2009 WL 249888 (S.D. Cal. Feb. 2, 2009)

(slip opinion).  The plaintiffs submitted 12 declarations of class members in

support of their motion.

Although there is no set minimum amount of evidence that a party

must submit, in this case, Plaintiffs have not submitted any evidence, not even

anecdotal evidence from other putative class members.  Accordingly, Plaintiffs'

renewed motion for class certification is DENIED WITHOUT PREJUDICE.

III.    <u>Plaintiffs' Motion for Preliminary Injunction</u>

Plaintiffs believe that they and members of the putative class will

suffer substantial physical and psychological injuries if Defendants are not

enjoined from requiring inmates to sleep on pads on the floor, requiring inmates to

sleep in areas of HCCC that are not designed for human occupancy,[5] and from

failing to provide reasonable access to toilet and/or bathing facilities, cleaning

supplies/materials, clean bedding, personal hygiene material, and significant daily

outside/exercise time.  (SAC at 9.)

---

[5] According to Plaintiffs, the areas not designed for human occupancy
include day-rooms, receiving rooms, and program spaces which lack operative
toilets.  (Mot. at 1.)

18

A.     Standard of Review

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008).  In order to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Id. at 365 (citing Munaf v. Geren, 128 S. Ct. 2207, 2218-19 (2008); Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)); see also Stormans, Inc. v. Selecky, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (applying heightened standard mandated by Winter); Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (2009).

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is likely in the absence of an injunction[;]" the mere possibility of irreparable harm is insufficient.  Winter, 129 S. Ct. at 375 (finding the Ninth Circuit's standard of a "possibility" of harm too lenient).  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not

19

conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1149 (2009).

If irreparable injury is shown, courts must then "'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 129 S. Ct. at 376 (quoting Amoco Prod. Co., 480 U.S. at 542). "In assessing whether the plaintiffs have met this burden, the district court has a 'duty . . . to balance the interests of all parties and weigh the damage to each.'" Stormans, 586 F.3d at 1138.

Finally, the court must weigh the public interest, if any, implicated by the injunction. Winter, 129 S. Ct. at 374. When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s][granting or] denying the preliminary injunction." Bernhardt v. Los Angeles County, 339 F.3d 920, 931 (9th Cir. 2003). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, 586 F.3d at 1139 (citing

20

Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 965 (9th Cir. 2002)).

"[When] an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-13 (1982).  In fact, "courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."  Winter, 129 S. Ct. at 376-77.

B.     Likelihood of Success on the Merits

Plaintiffs seek relief from alleged torts, violations of the Due Process Clause of the Fourteenth Amendment, and violations of the Eighth Amendment's prohibition against cruel and unusual punishment, arising from the conditions of their confinement at the HCCC facilities.  (Mot. at 3.)  Plaintiffs do not appear to move for this preliminary injunction based on all counts of their Second Amended Complaint, rather, they appear to address only the likelihood of success of their Eighth Amendment claim.

In response, Defendants essentially argue that the conditions at the prisons do not rise to the level of a constitutional violation, that Plaintiffs' statements are misleading, and that prison crowding and budgetary cuts prevent the State from improving the conditions.  Defendants state that "[i]t is well-known that

21

Hawaii's prisons are crowded and cannot accommodate all of the inmates committed by the Courts."  (Opp'n at 4.)

The Eighth Amendment's prohibition against infliction of cruel and unusual punishment is applicable to the states through the due process clause of the Fourteenth Amendment.  Roper v. Simmons, 543 U.S. 551, 560 (2005).  A person must first be convicted of a crime before this prohibition is applicable.  Ingraham v. Wright, 430 U.S. 651, 668 (1977).  "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'"  Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citation omitted); see Hallett v. Morgan, 296 F.3d 732, 745 (9th Cir. 2002); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).

In the Ninth Circuit, a court must analyze each claimed Eighth Amendment violation separately, but be mindful that the "condition of confinement does not exist in isolation."  Ray, 682 F.2d 1247.  Although the court must analyze the alleged violation in the context of the prison environment, the court must still make a determination as to whether that particular alleged condition itself violates the Eighth Amendment.  The Ninth Circuit has described the analytical framework in this way:

22

> [A court] must analyze each claimed violation in light of [the requirements to furnish prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety.]  <u>Courts may not find Eighth Amendment violations based on the 'totality of conditions' at a prison.  There is no Eighth Amendment violation if each of these basic needs is separately met.  If a challenged condition does not deprive inmates of one of the basic Eighth Amendment requirements, it is immune from Eighth Amendment attack</u>.  A number of conditions, each of which satisfy Eighth Amendment requirements, cannot in combination amount to an Eighth Amendment violation.

<u>Id.</u> at 1246-47 (emphasis added).

To prevail, a claim that an inmate has been deprived of humane conditions under the Eighth Amendment must satisfy each prong of a two-part analysis:  (1) the objective requirement, requiring that a prison official's acts or omissions caused deprivation of "the minimal civilized measure of life's necessities"; and (2) the subjective requirement, requiring "deliberate indifference" on the part of the defendant.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir. 2000).  These "life's necessities" include adequate shelter, food, clothing, sanitation, medical care, and personal safety.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 834 (1994).  "Deliberate indifference" requires that a prison official knows of and disregards an excessive risk to the inmate.  <u>Farmer</u>, 511 U.S. at 837; <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists and he must also draw the inference.  Farmer, 511 U.S. at 837.

Furthermore, a plaintiff must demonstrate that "failure to treat a prisoner's

condition could result in further significant injury or the 'unnecessary and wanton

infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991),

overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th

Cir. 1997) (en banc) (citing Estelle, 429 U.S. at 104).

     "Deliberate indifference is a high legal standard."  Toguchi v. Chung,

391 F.3d 1051, 1060 (9th Cir. 2004).  Besides showing the "unnecessary and

wanton infliction of pain," plaintiffs must show:  (1) "a purposeful act or failure to

respond to a prisoner's pain or possible medical need"; and (2) "harm caused by

the indifference."  Jett v. Penner, 439 F. 3d 1091, 1096 (9th Cir. 2006) (citing

Estelle, 429 U.S. at 104).  The harm need not be substantial, although "such would

provide additional support for the inmate's claim that the defendant was

deliberately indifferent to his needs."  Id. (citing Estelle, 429 U.S. at 104).

     For the reasons set forth below, Plaintiffs have failed to demonstrate a

likelihood of success on the merits for each alleged violation, and granting the

extraordinary remedy of a preliminary injunction is not warranted.  The evidence

presented along with the motion for preliminary injunction is inadequate for

Plaintiffs to prevail at this juncture.  At the hearing on this matter, Plaintiffs'

counsel informed the Court that additional evidence, in the form of affidavits, were

submitted along with Plaintiffs' motion for summary judgment, which is not yet

before this Court.  It is unclear to this Court why Plaintiffs would not offer their

evidence along with their motion for preliminary injunction.  As the record before

this Court currently stands, Defendants have not had an opportunity to respond to

Plaintiffs' evidence in the context of the instant motion.  The Court will therefore

rule on the evidence properly before it.  Should Plaintiffs choose to bring this

motion anew, Plaintiffs may at that time properly submit their evidence.

      1.    <u>Sleeping Facilities</u>

Plaintiffs assert various violations of the Eight Amendment regarding

the sleeping facilities at HCCC.  These include:  (1) requiring inmates to sleep on

mattresses on the floor; (2) failure to reasonably provide clean bedding and

clothing; and (3) requiring inmates to sleep in rooms not designed for sleeping.

The Court will address each in turn.

First, it is apparently undisputed that Costa and other inmates have

had to sleep on a mattress on the floor at various times.[6]  There does not appear to

---

[6] Costa's affidavit states that he was required to "sleep on the floor" in various facilities.  (Costa Mot. Aff. ¶¶ 5-7, 9.)  Defendants argue that this statement is incorrect or misleading, because Costa was given a mattress and was therefore not sleeping directly on the floor.  (Opp'n at 5.)  Plaintiffs appear to concede this
(continued...)

be a Ninth Circuit case directly addressing whether sleeping on a mattress on the floor is itself a violation of the Eighth Amendment.  To support their argument, Plaintiffs rely on a case from the Central District of California, Thomas v. Baca, 514 F. Supp. 2d 1201 (C.D. Cal. 2007).  In Baca, the district court ruled that requiring inmates to sleep on the floor was a violation of the Eighth Amendment. Id. at 1215.  To support its ruling, the court in Baca largely relied on district court cases and cases from other circuits.  The court in Baca even concedes that some circuits have actually held the opposite to be true (i.e., that floor-sleeping on mattresses is not unconstitutional).  Id. at 1217 n.11 (citing cases from the Sixth and Eleventh Circuits).  Such inconsistency among federal courts suggests that this is an unsettled point of law.

The court in Baca cited to Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir. 1989), to support its conclusion, but the Baca court's interpretation of Thompson is not persuasive to this Court.  In Thompson, the Ninth Circuit reversed a district court's grant of summary judgment for the defendant, and held that the plaintiff's allegation that he was provided with neither a bed nor a mattress

---

[6](...continued)
particular point, because in the Reply, Plaintiffs state that the record supports the claim that Costa "was routinely required to sleep on the floor, albeit on a mattress on the floor."  (Reply at 2.)

unquestionably constituted a cognizable claim.  Id. at 1448.  It is undisputed that in Thompson, the inmates slept on the floor without mattresses.  Similarly, in Baca, there were apparently instances of inmates sleeping on the floor without any mattress coupled with instances of inmates sleeping on the floor with a mattress. The Baca court stated that the Ninth Circuit's reasoning did not hinge on the lack of a mattress any more than it might have hinged on the lack of a bunk.  514 F. Supp. 2d at 1216.  This Court does not agree with the Baca court's interpretation of the holding of Thompson.  The Ninth Circuit explicitly mentioned the absence of mattresses, holding that "[Plaintiff's] uncontroverted allegation that he was provided with neither a bed nor even a mattress unquestionably constitutes a cognizable Fourteenth Amendment claim."[7]  Thompson, 885 F.2d at 1448.

This Court finds a meaningful distinction between requiring inmates to sleep directly on the floor and requiring inmates to sleep on mattresses on the floor.   Without a clear ruling on this matter from the Ninth Circuit, and considering the ambiguity on this matter between Circuits, this Court hesitates to conclude that Plaintiffs are likely to succeed on this particular claim.

---

[7] The Court acknowledges that the Ninth Circuit's statement was made in reference to the Fourteenth Amendment and not to the Eighth Amendment.  For purposes of this Order, however, the reasoning is applicable.

27

Second, Plaintiffs complain that inmates are given clean bedding and clean clothing only once a week.  (Costa Mot. Aff. ¶ 11.)  The matter of laundering clothing and bedding is reviewed for whether the practice is incompatible with the "evolving standards of decency" and deprives an inmate of "basic human needs."  See Ray, 682 F.2d at 1246.  The Eighth Amendment "requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable."  Id. (citation omitted).  In their motion, Plaintiffs do not cite any case which stands for the proposition that laundering clothes and bedding once a week is a violation of the Eighth Amendment.  And, contrary to Plaintiffs' claims, the Inmate Laundry Schedule submitted by Defendants demonstrates that linens are washed once a week and clothing is actually washed six days a week.  (Opp'n Ex. E.)  Plaintiffs do not directly refute this cleaning scheduling in their Reply.  (Reply at 3.)  Instead, Plaintiffs merely acknowledge that it may create a prima facie dispute.  (Id.)  Plaintiffs have submitted no evidence that the laundry schedule has resulted in deprivation of a basic human need, or created a risk to their health or safety.

Third, Plaintiffs' primary complaint about sleeping in what they refer to as "non-housing areas" appears to be that those rooms lack toilets.  (Mot. at 5.)  Plaintiffs contend that they are forced to notify and be escorted by correctional

28

officers to bathrooms.  Access to toilet and bathing facilities is discussed below in the following section.

  2. <u>Toilet and Bathing Facilities</u>

    Plaintiffs argue that their Eighth Amendment rights are violated because they do not have access to toilets without having to ask for permission and because they do not have adequate access to bathing facilities or personal hygiene material.

    Costa asserts that at various times he has been required to sleep in rooms that themselves do not have a toilet facility, including a mental health cell, a "visit room," and a day room.  (Costa Mot. Aff. ¶¶ 5, 6, 8.)  Costa states he had to notify a guard and be escorted to the toilet in another room.  (<u>Id.</u>)  It is not entirely clear from the record how long Costa was required to stay in these rooms without toilet facilities.  Costa indicates only that he spent "about a week in the day-room." (<u>Id.</u> ¶ 9.)  The remaining time he spent in the main facility, he did have a toilet in his room.  Defendants do not dispute that inmates may be required to sleep in rooms without toilets.

The Court notes that Plaintiffs do not present evidence that they are entirely without access to toilets.[8]  Instead, Plaintiffs decry the fact that they were required to notify a guard and be provided access to a toilet during those times they were held in a room without a toilet.  Data about how frequently and for how long this went on is absent from briefing submitted.  The only specific information on the matter is Costa's single statement that he spent approximately one week in the day room, and an unspecified amount of time in other rooms, and had to be escorted by guards to the bathrooms.  At the hearing, the Court informed the parties that the Court required additional evidence upon which to rule, including how quickly inmates are escorted to a toilet once an officer is notified.  The Court noted that a lengthy delay may turn what is otherwise a constitutional condition into an unconstitutional one.

Plaintiffs do not cite any controlling authority standing for the proposition that the simple absence of a toilet in a particular room, alone, is a violation of the Eighth Amendment.  Plaintiffs cite the 1990 opinion from the Southern District of New York, Benjamin v. Sielaff, which in turn cited to the Western District of Wisconsin when stating in a footnote that "confining detainees

---

[8] Although the Second Amended Complaint alleges that inmates at times were required to use trash cans and other containers, (SAC at 7), no argument or evidence of such is presented in the motion for preliminary injunction.

in receiving rooms pens and gymnasiums which lack operative toilets and

requiring that inmates be escorted by correction officers to bathrooms violates the

Fourteenth Amendment."[9]  752 F. Supp. 140, 141 n.3 (S.D.N.Y 1990).  Not only is

Benjamin not controlling on this Court, this Court finds the facts of that case are

distinguishable from the situation presented in this case.  The Southern District of

New York observed that the inmates were

> forced to sleep on crowded, filthy floors in close proximity to
> seriously ill people, many of whom have not been medically screened;
> they must rely on inadequate numbers of grossly unsanitary toilets and
> sinks; access to telephones is de minimis or nonexistent    . . . access
> to showers is rare or nonexistent; access to medical care and critical
> medication is sporadic at best.  Inmates . . . have had to resort to a
> shared plastic container to urinate.

Id. at 143 (first and second emphasis added).  The conditions found in Benjamin

indicated an actual and likely threat to the inmates' health and basic needs.  There

is no evidence in the record before this Court that the HCCC inmates are kept in

unsanitary conditions along with seriously ill people, that the toilets are unsanitary,

or that they urinate in plastic containers.  Plaintiffs contend only that they have to

ask permission to go to the bathroom, where presumably the toilets are operative

and sanitary.

---

[9] As discussed herein, an Eighth Amendment analysis may overlap with a
Fourteenth Amendment analysis.

Plaintiffs' reliance on Wolfish v. Levi, another case from the Southern District of New York, is likewise unavailing.  439 F. Supp. 114, 157 (S.D.N.Y. 1977), aff'd in part and rev'd in part on other grounds, 573 F.2d 118, (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979).  There, the court determined that it is unconstitutional for inmates to be confined in a cell that lacks a toilet.  In doing so, the court acknowledged that most cases condemning locked cells without toilet facilities involved "generally barbarous conditions (of filth, vermin, cramped quarters, etc.)."  Id.  The Southern District of New York then extended those ruling to the case presented to it.  Id.

There does not appear to be such an expansive reading of the law in the Ninth Circuit, and this Court will not apply an expansive interpretation of "access to toilets" when resolving whether success is "likely" on a motion for preliminary injunction.  Moreover, this Court does not have any information about the length of time inmates were actually deprived of toilet facilities, if they were at all, and what the condition of those facilities were.  See Anderson v. County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995).  As discussed above, Plaintiffs are sometimes required to ask permission to use the toilet facilities; no argument is made here that those toilet facilities are themselves inadequate, nonfunctional, or unsanitary.

32

Plaintiffs next argue that they do not have reasonable access to bathing facilities and personal hygiene materials.  (SAC at 7.)  Plaintiffs provide absolutely no evidence in support of this conclusory statement.  They do not submit evidence of how often inmates are granted access to showers and how often and what type of personal hygiene materials they are given.  The SAC also does not allege that inmates receive <u>no</u> access, just that they do not have "reasonable" access, which itself is a legal conclusion.  Without any data to review, this Court is unable to determine that Plaintiff would be likely to succeed on this claim.

Although the Court is unable to locate a Ninth Circuit case directly on point to the question of showers, the Seventh Circuit has addressed this issue and in one case rejected the contention that inmates must be allowed to take three showers a week.  <u>Davenport v. DeRobertis</u>, 844 F.2d 1310, 1316 (7th Cir. 1988).  In a statement that is seemingly in line with Ninth Circuit holdings, the Seventh Circuit concluded that the number of showers allowed per week to comply with the Eighth Amendment is not decided on a purely numerical basis, but rather on whether there is any danger to inmate health.  <u>Id.</u>  The Seventh Circuit concluded that the policy of one shower a week is constitutionally sufficient.  <u>Id.</u> at 1316-17.  As stated above, Plaintiffs have not alleged how often they are allowed to take showers, nor alleged any particular health risks.

33

Regarding personal hygiene items, the Eighth Amendment does protect an inmate's right to personal hygiene, and "[i]ndigent inmates have the right to personal hygiene supplies such as toothbrushes and soap." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) (citing Ray, 682 F.2d at 1246). However, Plaintiffs have failed to allege facts establishing deprivation of hygiene items. There is no evidence before this Court specifying what was, or was not given to inmates, whether the inmates were indigent, and whether any such deprivation was serious. See May v. Baldwin, 109 F.3d 557, 565-66 (9th Cir. 1997).

3.      Overcrowding

Plaintiffs contend that the cells are overcrowded. According to Costa, at certain periods he was required to "sleep on the floor side-by-side with several other inmates," sleep on the floor next to two other inmates sleeping on bunk beds, and spent 22 hours per day in his cell with two inmates in the same cell. (Costa Mot. Aff. ¶¶ 7, 9, 12.) Costa also states that he observed as many as seven inmates sleeping on the floor in a day room. (Id. ¶ 10.) Defendants do not directly address these allegations in their briefing. Defendants instead dispute the amount of days Costa spent at various HCCC facilities and whether he slept on the floor or on a bunk bed. (Opp'n at 5.) Defendants do not submit arguments or case law on the issue of overcrowding and the constitutionality of multiple inmates in one cell.

34

This Court's own review of Ninth Circuit case law on the issue of overcrowding concludes that overcrowding is not a violation unless it is shown to be the cause of serious hardships to the inmates.  It is not <u>per se</u> unconstitutional. A court must look at the totality of conditions and the effects of overcrowding.  <u>See</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347-48 (1981); <u>Ray</u>, 682 F.2d at 1248-49 (noting that overcrowding itself is not a violation of the Eighth Amendment, but that it can lead to specific effects that might form the basis of an Eighth Amendment claim).  A fact that a prison may be overcrowded has "no constitutional significance standing alone.  Only when overcrowding is combined with other factors such as violence or inadequate staffing does overcrowding rise to an eighth amendment violation."  <u>Balla v. Idaho State Bd. of Corr.</u>, 869 F.2d 461, 471 (9th Cir. 1989) (citations omitted).

Here, Plaintiffs do not provide this Court will such evidence that would lead this Court to conclude that the alleged overcrowding at HCCC violates the standards of human decency protected by the Eighth Amendment.  There is no indication of sickness or injury caused by the overcrowding.  Plaintiffs only argue that they do not have their own cell.  There is not, however, a constitutional right to a private cell.  <u>See</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 809 (9th Cir. 1995) (stating that prison officials offered a legitimate reason to place inmates in double cells when

35

evidence established that the facility was operating at over 200% capacity and there was a lack of available cell space).

4.   Cleaning Supplies

Costa claims, and Defendants do not dispute, that Costa was provided cleaning supplies to clean his cell once a week.  (Costa Mot. Aff. ¶ 11.)  This fact alone, despite Plaintiffs' apparent assumption, does not suggest a violation of the Eighth Amendment.  Plaintiffs rely on the Ninth Circuit opinion in Hoptowit v. Spellman, wherein the Ninth Circuit stated that "[f]ailure to provide adequate cell cleaning supplies, under circumstances such as [in that case], deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment."  753 F.2d 779, 784 (9th Cir. 1985).  In Spellman, there was evidence of inadequate lighting such that it hindered attempts to ensure basic sanitation conditions, plumbing was in such disrepair that it seriously threatened the inmates' well-being, the lack of ventilation undermined the inmates' health, and there was a vermin infestation throughout the prison.  Id. at 783-84.  The evidence before this Court falls far short of that presented in Spellman.  Nothing in the record shows that the condition of the cells seriously threatens the inmates' health.  There is simply no evidence submitted at all.  There is no description or documentation of the condition of the cells.

36

Plaintiffs actually acknowledge that they are given cleaning supplies once a week, but demand they be given supplies more frequently.  Plaintiffs offer no case law, and this Court has not located any, to support their contention that the mere fact that cleaning supplies are given once a week, itself, is a violation of the Eighth Amendment.  Nor is there any indication of an overriding health risk in the prison cells.

     5.    <u>Exercise Time</u>

Plaintiffs argue that Defendants do not provide inmates with adequate exercise time.  (SAC at 9.)  Costa attests that he receives approximately 45 minutes of "indoor recreation" each day while housed at the main Punahele facility.  (Costa Mot. Aff. ¶ 12.)  Costa also attests that he received "outdoor recreation" once a week at most while at the Waianuenue facility.  (<u>Id.</u> ¶ 14.)  According to Costa, he was required to spend approximately 22 hours per day in his cell while at the Punahele facility.  (<u>Id.</u> ¶ 12.)

In <u>Pierce v. County of Orange</u>, the Ninth Circuit noted that "other courts have held that detainees who are held for more than a short time and spend the bulk of their time inside their cells are ordinarily entitled to daily exercise, of five to seven hours of exercise per week, outside their cells."  526 F.3d 1190, 1212 (9th Cir. 2008).  The Ninth Circuit declined to set a specific minimum amount of

weekly exercise, although it held in Pierce that fewer than 13 minutes per day constituted a violation.  Id.  Assuming as true Costa's statement that he received 45 minutes of daily exercise while at Punahele, the inmates at Punahele receive approximately 5 hours and 15 minutes of indoor exercise each week.  Assuming as true Defendants' evidence that inmates receive one hour per day, then they receive 7 hours per week.  (Opp'n at 6.)  Under either scenario, Defendants are ostensibly in compliance at the Punahele facility.  Regarding the Waianuenue facility, Costa states only that he received outdoor recreation once a week; Costa does not state how much, if any, indoor recreation he is allowed each week.  The Ninth Circuit has not held that denial of outdoor recreation is a per se violation of the Eighth Amendment.  See Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  To the contrary, the Ninth Circuit has recently noted that no authority clearly establishes that restricting outdoor recreation is a per se violation of the Eighth Amendment.  Norwood v. Vance, 591 F.3d 1062, 1070 (9th Cir. 2010)  "Inclement weather" is one situation in which outdoor recreation may not be feasible.  See Procunier, 600 F.2d at 199.  The most clear mandate from the Ninth Circuit requires some form of regular outdoor exercise for inmates confined to continuous and long-term segregation, which does not appear to be at issue before this Court.  See Keenan, 83 F.3d at 1089-90.

Moreover, the evidence presented by Defendants shows that, in fact, inmates receive one hour of exercise per day at all HCCC facilities.  The "Recreation and Leisure Time" policy states that general population inmates receive a minimum of one hour of recreation per day either indoors or outdoors, and segregation inmates receive one hour of exercise five days per week either indoors or outdoors.  (Opp'n Ex. G.)  In the policy,  "inclement weather" may result in holding recreation indoors.  (Id.)  In their Reply, Plaintiffs do not dispute these facts.  (Reply at 4.)

Plaintiffs' reliance on <u>Allen v. Sakai</u>, 48 F.3d 1082 (9th Cir. 1994), is not convincing because there, the inmate presented evidence that for six weeks he was permitted out of his cell only once a week.  Such as extreme factual scenario is not presented here.  It appears from the facts presented to the Court that inmates are, in fact, granted one hour of exercise per day in most circumstances.

Considering the foregoing, the Court concludes that Plaintiffs have not met their burden to establish a right to preliminary injunction on this ground.

6.    <u>Visitation</u>

Plaintiffs' allegations regarding visitation are undeveloped, and based on the record now before this Court, a preliminary injunction is not warranted on this ground.  First, it is not clear whether Plaintiffs actually raise a separate cause

39

of action based on alleged denial of visitation.  In the Second Amended Complaint, visitation is mentioned only as part of one sentence along with exercise: "Defendants regularly restricted Plaintiffs and other inmates to their housing areas and denied them the right to visitation and daily outside recreation/exercise time." (SAC at 7-8.)  Second, Plaintiffs' motion does not address visitation rights beyond a mere reference to the alleged deprivation.  (Mot. at 2.)  The only specific information provided to the Court by Defendants is that Costa lost his visitation privileges from July 24 to August 6 as a result of an unauthorized telephone call to his sister.  (Opp'n at 6.)  No further information concerning the remainder of Costa's time at the facility, and whether he was allowed visitation, is provided. Plaintiffs entirely fail to present any evidence of either an actual deprivation, or evidence that the purported deprivation is a likely violation of the Eighth Amendment such that this Court may grant a motion for a preliminary injunction on this ground.

       7.     <u>Deliberate Indifference</u>

      In the foregoing sections, this Court has addressed each allegation and determined that Plaintiffs have, at this stage of litigation, failed to demonstrate a likelihood of success on the "objective" prong of the Eighth Amendment analysis.

Plaintiffs further fail to prove, or even present evidence suggesting, that any particular individual exhibited deliberate indifference.  This Court may infer that the warden is the particular person accused of exhibiting deliberate indifference, but Plaintiffs do not specifically address this point in their briefing.  The Court also concludes that, at this stage, Plaintiffs have not shown that a substantial risk of harm existed, or that the warden knew that the risk existed.

     C.    <u>Likelihood of Suffering Irreparable Harm, the Balance of Equities, and the Public Interest</u>

Because Plaintiffs have not demonstrated a likelihood of success on the merits, the Court need not address the three remaining elements of a preliminary injunction analysis.  However, in an abundance of caution, the Court has considered the three remaining elements and determined that Plaintiffs cannot prevail at this juncture.

First, Plaintiffs have not demonstrated a likelihood of suffering irreparable harm.  Plaintiffs appear to argue that the simple fact that their constitutional rights are infringed upon proves irreparable harm.  (Mot. at 8.)  This argument presumes that this Court agrees that their constitutional rights are

41

violated; as discussed above, however, the Court has determined that Plaintiffs

have failed to demonstrate constitutional violations that warrant a grant of

preliminary injunction.

The only specific assertion of injury is that a single plaintiff, Costa,

has back problems.  (Id.)  Costa states that the back problems arise from an

automobile accident, and not from the conditions at HCCC.  (Costa Mot. Aff. ¶ 4.)

There is no assertion that any conditions at HCCC caused these back problems or

worsened the back problems.  To the contrary, in Costa's affidavit, he states that

while working in the "work release program," he informed staff of his back

problems and then was "immediately removed from the work programs."  (Id.

¶¶ 16-17.)  It appears that HCCC staff was mindful of and responsive to Costa's

complaints.

Lastly, Plaintiffs' mere two-sentence statement offers no meaningful

argument of the final two prongs of the analysis, the balance of equities and the

public interest.  (Mot. at 10-11.)  Indeed, the balance of equities weighs against

Plaintiffs here.  Although this Court does not take potential infringement of

constitutional rights lightly, it would be quite a burden indeed to order a system-

wide overhaul of the State of Hawaii's penal system based on these poorly

supported accusations without benefit of further litigation.  The public interest here is at best a neutral factor, because even though the community has an interest in upholding general standards of decency in our prison system, the practical impact of prison conditions to the general population is not of great magnitude.

Accordingly, Plaintiffs' Motion for Preliminary Injunction is DENIED.[10]

---

[10] Although Plaintiffs do not brief their remaining claims in their motion for preliminary injunction, the Court has reviewed the allegations and concludes that Plaintiffs have not met their burden for a preliminary injunction on these counts.

Plaintiffs do not submit any Fourteenth Amendment argument separate from their Eighth Amendment arguments.  The Fourteenth Amendment is applicable to the conditions of confinement of pre-trial detainees because they have not yet been convicted of a crime.  Or. Advocacy Center v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003).  "[T]he guarantees of the Eighth Amendment provide a minimum standard of care for determining" the rights of pre-trial detainees."  Id. at 1120.  Because Plaintiffs have supplied no other evidence, argument, or standard for this Court to review besides that for the Eight Amendment, this Court's Eighth Amendment analysis presented above applies to the Fourteenth Amendment claims as well.  For reasons already discussed, Plaintiffs' motion for preliminary injunction based on alleged violation of their Fourteenth Amendment rights is denied.

Plaintiffs' remaining claims appear to be claims that seek damages, and are therefore not relevant to their motion for preliminary injunction.

## CONCLUSION

For the reasons stated above, the Court DENIES WITHOUT PREJUDICE Plaintiffs' Renewed Motion for Class Certification and DENIES WITHOUT PREJUDICE Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 25, 2010.



_____
David Alan Ezra
United States District Judge

Reynold Botelho, et al. v. State of Hawaii, et al., Civ. No. 06-00096 DAE/BMK; ORDER:  (1) DENYING WITHOUT PREJUDICE PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION; AND (2) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION